**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ASHTON DANIEL (#R69925), ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 18-cv-05685 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| GLEN AUSTIN, Acting Warden, ) | |
| Graham Correctional Center, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Ashton Daniel, a prisoner at Graham Correctional Center, brings this *pro se* habeas corpus action pursuant to 28 U.S.C. § 2254 to challenge his 2012 convictions for armed robbery and aggravated unlawful restraint from the Circuit Court of Cook County. For the reasons that follow, the Court denies the petition on its merits and declines to issue a certificate of appealability.

**BACKGROUND**

State court factual findings, including facts set forth in state court opinions, have a presumption of correctness, which Daniel has the burden of rebutting by clear and convincing evidence. *See* 28 U.S.C § 2254(e)(1); *Tharpe v. Sellers*, 138 S. Ct. 545, 546 (2018); *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020). Daniel has not made such as showing. Accordingly, the Court draws the following factual history from the state court record (Dkt. No. 15) and state appellate court opinions.

Daniel robbed a health food store in Chicago's Chatham neighborhood on May 28, 2010. *Illinois v. Daniel*, 12 N.E.3d 715, 719 (Ill. App. Ct. 2014). The store owner, Ayoob Shafi, and a store worker, Naveed Khan, were in the store when Daniel entered. *Id*. Shafi met Daniel at the

store's front counter and agreed to check his Link card balance,[1] while Khan was in a back office. *Id*. Daniel drew a gun and demanded money from Shafi. *Id*. Shafi complied, giving Daniel money from the cash register. *Id*. Daniel then instructed Shafi to lie on the ground, threatened to shoot him, and took more money from the register. *Id*. A second man entered the store while Daniel ordered Shafi to crawl towards the back of the store. Daniel kicked and beat Shafi as he complied. *Id*. Daniel continued to demand more money, resulting in Shafi surrendering his wallet. *Id*. at 719–20. He also placed the gun in Shafi's mouth, threatening to shoot him if he talked. *Id*. at 720.

Daniel and the other offender next turned their attention to the office where Khan was located. *Id*. The men broke down the office door and threatened Khan. *Id*. Shafi was able to flee through the front of the store while the offenders were in the back. *Id*. The offenders attempted to chase Shafi, but soon fled with approximately $450 to $500 from the robbery. *Id*. But Daniel left his Link card behind at the store. *Id*.

Shafi told the investigating police detective that he had previously seen the assailant at the store and gave a description of him. *Id*. The investigating officer learned that the Link card belonged to Daniel and had been used two weeks before the robbery. *Id*. Shafi provided video surveillance footage to the officer from both the robbery and two weeks prior. *Id*. Daniel later reported his Link card stolen two weeks after the robbery. *Id*.

Approximately three weeks after the robbery, Shafi identified Daniel as the assailant in a police photo array. *Id*. Shafi told the police that, "the gentleman in picture number 2 looked like the offender, but he could not be a hundred percent certain from the photograph," and he "would

---

[1] The Link card, which looks and works like a debit card, is the means by which eligible Illinois residents receive cash assistance and SNAP (food stamps) benefits. *See* https://www.dhs.state.il.us/page.aspx?item=30371 (last visited December 27, 2020).

need to see the individual in person to make the identification." *Id*. Daniel was arrested on an unrelated matter approximately three months after the robbery. *Id*. At that time, an in-person lineup was arranged, during which Shafi identified Daniel as his assailant. *Id*. Khan did not view the in-person lineup because of a conflict due to a religious holiday. *Id*. Nonetheless, both Shafi and Khan identified Daniel as the offender at trial. *Id*. Moreover, a surveillance video from the store was introduced at trial. *Id*. at 724. Although blurry at times, the video supported the conclusion that Daniel was the offender. *Id*.

Daniel was found guilty at the completion of the jury trial. *Id*. at 720. He subsequently raised eight claims before the Illinois state appellate court on direct appeal: (1) the photo array and lineup identification procedures were unduly suggestive; (2) the State failed to prove him guilty beyond a reasonable doubt; (3) the State made improper and prejudicial comments during opening statements and closing arguments; (4) his sentence was excessive; (5) his aggravated unlawful restraint conviction violated the one-act, one-crime doctrine; (6) the jury was not properly instructed regarding armed robbery with a firearm; (7) the jury did not make the requisite finding to support a 15–year firearm enhancement; and (8) he was improperly assessed a $200 DNA indexing fee. *Id*. at 719 (Dkt. No. 15-4 at 10–11; Dkt. No. 15-7 at 5.) In his petition for leave to appeal ("PLA") on direct appeal to the Supreme Court, Daniel raised a single issue regarding the armed robbery with a firearm jury instruction (*i.e.*, issue 6 before the appellate court). (Dkt. 15-No. 10.) The Illinois Supreme Court denied Daniel's PLA. *Illinois v. Daniel*, No. 117814, 20 N.E.3d 1257 (Ill. Sept. 24, 2014) (Table).

Daniel brought two additional proceedings in state court following the direct appeal. The first was a motion for relief from judgment pursuant to 735 ILCS 5/2-1401, in which Daniel

3

challenged: (1) the purportedly erroneous jury instruction; (2) the pre-trial lineup; and (3) the effectiveness of his trial counsel. *Daniel*, No. 2018 IL App (1st) 152029-U, 2018 WL 401284, at *2; (Dkt. No. 15-12 at 21–47.) The state trial court denied the motion. (Dkt. No. 15-12 at 48–54.) And Daniel did not appeal that denial.

Daniel then brought a postconviction petition arguing that: (1) his trial counsel was ineffective for failing to challenge his conviction on an uncharged offense, failing to object to a violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), failing to object to an erroneous jury instruction, and failing to investigate and present certain witnesses; and (2) his appellate counsel was ineffective for failing to raise those same issues on direct appeal. *Illinois v. Daniel*, No. 2018 IL App (1st) 152029-U, 2018 WL 401284, at *2 (Ill. App. Ct. Jan. 10, 2018); (Dkt. No. 15-12 at 94–111.) The state trial court denied the petition. (Dkt. No. 15-12 at 112–24.)

Daniel appealed the denial of his postconviction petition to the state appellate court. But in that appeal, appointed counsel argued only that trial counsel was ineffective for failing to present a witness who did not identify Daniel at the pretrial lineup and for failing to investigate and present alibi witnesses. *Daniel*, No. 2018 IL App (1st) 152029-U, 2018 WL 401284, at *3; (Dkt. No. 15-13 at 2.) Daniel did not raise ineffective assistance of appellate counsel on postconviction appeal. However, his postconviction PLA raised the ineffective assistance of trial counsel arguments that were asserted before the state appellate court as well as the argument that appellate counsel on direct appeal was ineffective for failing to challenge trial counsel's errors regarding *Apprendi* and jury instructions. (Dkt. No. 15-17.) The Illinois Supreme Court denied the postconviction PLA. *Illinois v. Daniel*, No. 123287, 98 N.E.3d 57 (Ill. May 30, 2018) (Table). Daniel now brings the instant habeas corpus petition.

4

## DISCUSSION

### I. Claim One: Ineffective Assistance of Appellate Counsel

Daniel first argues that his appellate attorney on direct appeal was ineffective for failing to challenge his trial attorney's performance. Specifically, Daniel claims that his trial lawyer erred by failing to raise an *Apprendi* claim and by not presenting two defense witnesses, and thus his direct appeal appellate attorney was ineffective for failing to raise those issues on appeal.

Respondent contends that this claim has been procedurally defaulted because it was not properly raised before the state courts. To preserve a claim for federal habeas corpus review, a prisoner must fairly present the claim by setting forth the operative facts and applicable law to the state courts. *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009). The claim must be presented through one complete round of state court review, including by means of a PLA before the Illinois Supreme Court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845–46 (1999); *Weaver v. Nicholson*, 892 F.3d 878, 886 (7th Cir. 2018).

Respondent is correct that Claim One was not raised through one complete round of state court review as required. The record reveals that Daniel did not raise an ineffective assistance of appellate counsel claim on direct appeal or as part of his 2-1401 proceeding. He did raise the claim in his postconviction proceeding at the trial court level and his PLA, but he failed to raise the claim to the state appellate court. That failure results in procedural default. *See Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (instructing that to preserve a claim, the prisoner is "required to raise the claim at each level of state court review: in his initial post-conviction petition before the trial court, in his appeal to the Illinois Appellate Court, and in his Petition for Leave to Appeal (PLA) to the Illinois Supreme Court.").

Furthermore, Daniel cannot excuse his default based on a showing of either cause and prejudice or the existence of a fundamental miscarriage of justice. Regarding the former, cause must be an "'objective factor, external to [the petitioner] that impeded his efforts to raise the claim in an earlier proceeding.'" *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Smith v. McKee*, 596 F.3d 374, 382 (7th Cir. 2010)). Examples of cause include: (1) interference by officials making compliance impractical; (2) the factual or legal basis was not reasonably available to counsel; or (3) ineffective assistance of counsel. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)).

Here, Daniel argues that his postconviction appellate counsel was ineffective for omitting the ineffective assistance of appellate counsel claim. However, an ineffective assistance of counsel argument asserted to excuse a default must, itself, be properly preserved in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Daniel has not exhausted any ineffective assistance of counsel argument to excuse the default of this claim. Moreover, ineffective assistance of postconviction appellate counsel does not provide grounds to excuse procedural default. *Davila v. Davis*, 137 S. Ct. 2058 (2017).

That leaves the fundamental miscarriage of justice (*i.e.*, actual innocence) pathway for Daniel to attempt to excuse his default. To show actual innocence to defeat a default, Daniel must demonstrate that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggins v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). This is a "demanding" and "seldom met" standard. *McQuiggins*, 569 U.S. at 386 (citing *House v. Bell*, 547 U.S. 518, 538 (2006)). Daniel must present new, reliable evidence that was not presented at trial—such as exculpatory scientific

6

evidence, trustworthy eyewitness accounts, or critical physical evidence—to make a credible claim of actual innocence. *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324); *see also McDonald v. Lemke*, 737 F.3d 476, 483–84 (7th Cir. 2013) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who places him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'")). But he cannot do so, as the two victims identified him at trial, the surveillance video recorded the incident, and his Link card was also found at the crime scene.

Accordingly, Daniel's claim is procedurally defaulted, and he cannot excuse his default through a showing of either cause and prejudice or a fundamental miscarriage of justice. Claim One is thus denied.

## II. Claim Two: Ineffective Assistance of Trial Counsel – *Apprendi* Error

Daniel next argues that his trial attorney was ineffective for failing to object to an *Apprendi* error at trial. But Respondent correctly points out that this claim is procedurally defaulted as well. Although Daniel did not raise an ineffective assistance of counsel claim on direct appeal, he did raise the underlying *Apprendi* claim. However, Daniel did not raise any *Apprendi*-related claim in his direct appeal PLA. He did argue that his trial counsel was ineffective for failing to raise the *Apprendi* issue at times in his 2-1401 and postconviction proceedings but, as with Claim One, he failed to raise the claim to all levels of state court review (state trial, appellate and supreme court) as required. *Smith*, 565 F.3d at 352. Equally, as with Claim One, Daniel cannot excuse his procedural default through a showing of either cause and prejudice or a fundamental miscarriage of justice. Therefore, Claim Two is also denied.

7

### III. Claim Three: Ineffective Assistance of Trial Counsel – Failure to Call Witnesses

Daniel's final argument is that his trial attorney was ineffective for failing to investigate and call two witnesses in support of his case. Both witnesses relate to Daniel's argument that he was misidentified as the assailant. The first witness, Vicki Johnson, viewed the police lineup but did not identify Daniel. *Daniel*, No. 2018 IL App (1st) 152029-U, 2018 WL 401284, at *3. The second witness is Daniel's girlfriend, who he claims would have provided him with an alibi. *Id*.

Daniel presented this claim in his postconviction proceeding, but it was rejected because he failed to provide a necessary supporting affidavit. *Id*. The state court's rejection of this claim provides an adequate and independent state law ground of decision resulting in procedural default of the claim in this Court. *Thompkins v. Pfistser*, 698 F.3d 976, 986 (7th Cir. 2012) (holding that state court's rejection of ineffective assistance of counsel claim because of failure to provide required affidavit in support of postconviction petition resulted in procedural default of claim in federal court).

Furthermore, Daniel cannot excuse his default. Daniel argues that he could not submit the required affidavit due to a lack of discovery and difficulty obtaining information through freedom of information requests. But Illinois law requires a prisoner to provide either the affidavit or an explanation why he is unable to comply with the affidavit requirement. *Thompkins*, 698 F.3d at 986 (citing 725 ILCS 5/122-2). And Daniel did not provide the necessary explanation in the state court to excuse his failure to submit an affidavit. *Daniel*, No. 2018 IL App (1st) 152029-U, 2018 WL 401284, at *4. Moreover, as explained above, Daniel cannot demonstrate actual innocence to excuse his default. Claim Three is thus denied.[2]

---

[2] Beyond the procedural default, Daniel's claims are also meritless. The jury instructions allowed the jury

## CONCLUSION

As all three of his claims fail, Daniel's habeas corpus petition is denied. The Court declines to issue a certificate of appealability, as Daniel cannot make a substantial showing of the denial of a constitutional right—that is, reasonable jurists would not debate, much less disagree with, this Court's resolution of Daniel's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Daniel is advised that this is a final decision ending his case in this Court. If he wishes to appeal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Daniel need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if

---

to find Daniel guilty of using either a firearm or a dangerous weapon, instead of solely requiring a firearm. *Id*. at 733. The state appellate court found this to be an *Apprendi* error but concluded that it did not result in plain error because "[h]ere, the State proved beyond a reasonable doubt that defendant used a firearm in the offense. Indeed, this fact was uncontested at trial." *Id*. The state appellate court is correct that an *Apprendi* error is subject to harmless error review. *Washington v. Recuenco*, 548 U.S. 212, 222 (2006); *United States v. Adkins*, 274 F.3d 444, 454 (7th Cir. 2001). Regarding the alleged failure to investigate and call defense witnesses, the store owner and employee who identified Daniel had ample opportunity to observe him. *Daniel*, No. 2018 IL App (1st) 152029-U, 2018 WL 401284, at *4. This, along with the surveillance video and the fact that Daniel left his Link card at the scene, supports his conviction. In contrast, there is little indication in the record of what Daniel's two witnesses would have said. Counsel is not ineffective for failing to pursue these losing arguments. *Carrion v. Butler*, 835 F.3d 764, 779 (7th Cir. 2016).

seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

ENTERED:

Dated: December 30, 2020

_____
ANDREA R. WOOD
United States District Judge